IN THE UNITED STATES DISTRICT COURT FOR THE STATE OF DELAWARE

Scott Walker, pro se,

      PLAINTIFF.

   v.

City of Harrington Delaware, et. al.

C.A. No. 23 - 58 -

## THE PARTIES

Plaintiff Russell E. "Scott" Walker, 71, is a resident of Delaware and can be served at  26 Fairway Drive Apt. 2C Newark DE 19711

City of Harrington and Harrington Defendants may be served at 106 Dorman St. Harrington DE 19952

Harrington Defendants:  Duane Bivans, Joseph Perna, Norman Barlow, Daniel Tartt, Robert Farmer, Jack Stewart, Micah Parker, Darren Simpson, Ervin White, Michael Kimmey

Defendant Brandywine counseling and Community Services (BCCS) and BCCS defendants Lynn Morrison, Ron Pinkett, Adriana Navas, Matthew Shalk, Denise Stypinski, Adar Wells, Nicole Manelski, Dionne Cornish, Monica P. Alverez, Aseia Franl, Bernadette Winston, Charles H. Toliver, Robert Procopio, Susan Huffman, Rebecca Jones and Latrice Mason may be served at 2713 Lancaster Ave. Wilmington DE 19805

## COMPLAINT

## FACTUAL BACKGROUND

On or about May 18, 2021, the Plaintiff was stopped a City of Harrington police officer on Delaware Rte. 6 outside the Harrington city limit for speeding. The Officer asked the Plaintiff to take a field sobriety test. Plaintiff refused and told the Officer he was disabled and could not pass the standard test as administered by the Harrington Police Department (hereinafter HPD). Next, the Plaintiff asked for an accommodation under the Americans with Disabilities Act (hereinafter ADA II), that accommodation being to walk home. The HPD officer refused Plaintiff's request.

The unidentified Harrington police officer then handcuffed Plaintiff, towed and impounded his car and locked him up in the Harrington City jail. For ten hours the Plaintiff was held against his will in a cell with no water, food or toilet facility.

Several times the unidentified officer would use an uncertified breathalyzer to test Plaintiff's blood alcohol content (BAC). Using the results of the breathalyzer as evidence, the officer charged Plaintiff with Driving While Impaired and Driving Under the Influence of Alcohol, both Delaware laws found under Title 21 of the Delaware Criminal Code. Eventually, the Plaintiff was freed to walk the thirty miles to his residence at that time. This release was at approximately 2:00 am.

Several days later, Plaintiff took a bus and then walked 5 miles in 90- degree heat to pick up his car. Plaintiff paid the $300 tow/storage bill and drove to work.

The Harrington Police Department only field tests suspected DUI drivers, not other drivers who may be more severely impaired. Those drivers are given a ticket for their crime and then allowed to go on their way. Suspected DUI drivers are taken to the Harrington jail and held until their BAC is below .08%, when they are released.

It is a well-known fact that BAC does NOT measure driver impairment or any other driver behavior. BAC only measures the percentage of alcohol in one's blood. The ONLY true, objective measure of driver impairment or performance is a field test or physical examination by a trained observer. BAC is just another vital statistic like blood pressure, pulse or liver function that may PREDICT impairment or performance, but cannot measure it at any point in time.

 As such, it cannot be used as evidence of impairment, a behavior trait. City of Harrington used BAC to charge the Plaintiff with DUI and DWI based on the assumption that the BAC reflected in the uncertified breathalyzer reading measured the Plaintiff's impairment, or fitness, to drive a motor vehicle. IT DID NOT. The BAC reading was falsely used as evidence.

PLAINTIFF'S INJURIES AT THE HANDS OF CITY OF HARRINGTON

The Plaintiff has experienced many nightmares and much anxiety since being forcefully confined in the Harrington jail by the Harrington Police for over eight hours without water, food, toilet facilities or any way of knowing how long he would be held in the windowless cell without communication with any other person besides his captor.  Plaintiff continues to suffer humiliation and embarrassment over this matter.

Plaintiff has not had a driver's license for over a year and a half, denying him the opportunity to gain and maintain adequate employment and income to survive.  Because of the Defendants' illegal acts, the Plaintiff has been, until very recently, virtually homeless, depending on the charity of others for housing.

Because of the trauma inflicted by the Defendants, the Plaintiff has been put on the anti-depressant Wellbutrin to counteract the symptoms of depression and anxiety that arose dating back to the time of his arrest by the Harrington Police. The Plaintiff has developed a heart murmur and irregular heartbeat plus high blood pressure that is being treated with the prescription drug Lisinopril as a result of being arrested.

The stress of being immobile, unable to get gainful employment and the consequent near total loss of freedom that comes with owning a vehicle and driving it legally has been devastating for the Plaintiff. This status has actually caused his alcoholism to be more acute, another injury caused by the Defendants.

Since Defendant BCCS discharged Plaintiff from their DUI program, Plaintiff has suffered a marked increase in anxiety and depression. In December 2022 the Plaintiff was referred to two specialists for the worsening irregular heartbeat.  His blood pressure has worsened since the discharge and now requires double the previous dosage of Lisinopril to manage the problem.

BCCS CONSUMER FRAUD, MISREPRESENTATION AND MISTREATMENT OF THE DISABLED

BCCS is a Delaware corporation masquerading as a healthcare provider but is actually an

extension of the Delaware criminal justice system. Low level, uneducated employees – many of

them former and current drug addicts- have the power to send so-called clients to jail for

violating probation if they are discharged from phony BCCS programs fraudulently claiming to be treatment programs.  BCCS is guilty of wire fraud and mail fraud.

During Zoom classes BCCS employees frequently verbally threatened clients – including Plaintiff – with discharge from its DUI program if the clients did not obey their random, arbitrary demands during class. No set rules for client behavior were set, allowing BCCS "hosts" to make the rules as they went along. This frightened all clients including the Plaintiff, causing him injury.

BCCS collects over $1000 in fees to attend its so-called classes. As BCCS is no more than an extension of the Delaware criminal justice system, these "fees" are effectively fines.  They are excessive and unconscionable and violate the 8th Amendment prohibition of excessive fines.

  Also intimidating was the rule that everyone inside a BCCS facility was required to wear a mask, even though BCCS employees behind glass partitions could be plainly seen not wearing a mask, long after the State ended mask mandates. BCCS required masks to coerce clients into believing BCCS was a healthcare provider when in fact it was not. The masking was intimidating for clients and Plaintiff avers the masking was intentional intimidation and harassment.  BCCS injured the Plaintiff by forcing him to wear a mask, causing him to inhale toxins he exhaled, and he frequently had symptoms like gagging and feeling light-headed while wearing a BCCS-supplied black mask.


BCCS employees engaged in money laundering. A large sign at BCCS offices stated that only cash was accepted for their services. Plaintiff paid defendant Rebecca Jones $500 in cash to sign

up for the DUI program.  These cash payments to BCCS employees were concealed from scrutiny and financed vacations, cars and other luxuries enjoyed by BCCS employees.

Plaintiff was sentenced to the BCCS Zoom class program to get his driver's license revocation removed at Delaware Superior Court. The BCCS Zoom class protocol is **only** to give the client the meeting number and start date along with the scheduled meeting dates. Sixteen classes must be completed, two per week.  On purpose, the client is left to figure out how to download the Zoom app and figure out which icons to push on his/her cellphone or laptop in order to be seen and heard in the Zoom class. Plaintiff is 71 and not tech savvy. It was unfair to him and others like him.

Many in BCCS'S DUI program don't even own a cellphone or laptop let alone pay nearly $1000 to purchase the course.  Plaintiff collects $1200 per month in Social Security Retirement payments. He had to borrow the $500 cash payment from a friend to register for the program.

No effort is made to accommodate these disabled citizens, like the Plaintiff.  No effort was made to accommodate the Plaintiff who was clueless on how to be seen and heard on the Zoom class.  Plaintiff avers his right to free speech was denied by BCCS in this instance.

BCCS misrepresented in its documents and advertisements that it was a healthcare provider whose goal was to help Plaintiff with his alcoholism and Plaintiff depended on BCCS's characterization of itself as a healthcare provider. When Plaintiff found out that BCCS was

merely an extension of the Delaware criminal justice system and engaged only in prolonging the punishment of Plaintiff, the Plaintiff was injured in that he experienced great disappointment and was depressed and experienced anxiety because of BCCS's lies and prevarications.

Plaintiff has paid over $700 to date for the BCCS bogus "DUI program".  BCCS defrauded Plaintiff here.  BCCS stole Plaintiff's $700 under false pretense and under Delaware consumer fraud laws.


The absence of guidelines, instructions, rules and notice in BCCS programs is not an oversight or accident. Through the explicit cooperation and orders of the State of Delaware Health and Social Services Department, their partner, BCCS intentionally uses this bedlam to penalize and eventually dismiss clients from their so-called program, causing them to violate probation and stay in the criminal justice system longer than advertised. This is income for the State and BCCS, who receives a kickback from other similar providers that the client is sent to after BCCS is done with them through the discharge process.


BAIT AND SWITCH MISREPRESENTATION

BCCS claims to be a healthcare provider but is instead a part of Delaware's criminal justice system. Zero emphasis is on the methods of ending alcohol addiction like weaning. Instead, the BCCS program requires the client to quit alcohol abruptly cold turkey, a dangerous and risky

strategy. Seizures, hallucinations, and even coma and death can occur in an individual who quits any addictive substance like alcohol abruptly.

BCCS provides methadone and suboxone as a substitute for heroin for addicts. BCCS does operate a weaning program for those disabled clients, but not the alcoholics. The heroin addicts are treated far better than the alcoholics. The alcoholics are punished severely compared to the heroin addicts. This is another example of unequal treatment handed down to alcoholics by the State of Delaware and BCCS.

## BCCS ARE TYRANTS

BCCS is a Delaware corporation claiming to offer treatment to DUI offenders but only offers another level of punishment for DUI offenders. There is zero treatment involved in the program.  The Kafkaesque, catch 22, mindless protocols of this BCCS "program" staggers the imagination with its outright fraud, deception, misrepresentation, cruelty and multiple violations of state and federal laws.

Huge sums of money are extracted from hapless disabled, poverty level DUI offenders like the Plaintiff. Ostensibly, in return, the offenders are forced to endure hour long "classes" run by arrogant, tyrannical "hosts" who spend the hour insulting, humiliating and ridiculing the participants. Plaintiff endured all of this time-wasting nonsense while attending these so- called

"drunk" classes, which are basically chat rooms run by uneducated tyros abusing disabled

people forced to attend to get their driver's license restored.


In 2021 Plaintiff attempted three times to sign up for the BCCS DUI program after paying $150.

Each time a document was given to the Plaintiff by BCCS staff with a date and time to show up

for intake (please see Exhibit). Three times BCCS staff missed the time and date of intake. On

the fourth try Plaintiff was admitted to the program after paying $500 – only cash is accepted

to avoid paying taxes- and signing documents he did not receive a copy of and producing an

unsupervised urine sample.  BCCS illegally extended his probation and license revocation period

for profit, and in this way, did injure the Plaintiff.

 There is NO legitimate chain of custody for urine samples collected by BCCS, rendering them

useless as evidence.  BCCS injured the Plaintiff through their intentional or unintentional

negligence in enrolling him in their DUI program because it further delayed the possibility of

getting his license back for another four months.  This caused the Plaintiff great emotional

distress and anguish.


BCCS wanted their money. They extorted the Plaintiff by claiming if he didn't pay up, he would

not get his license back.  BCCS blackmailed Plaintiff by implying if he didn't pay his "fees"

he/she/they would be reported to Delaware Probation and Parole and sent to prison for

probation violation. This is standard operating procedure for all BCCS DUI "clients," or

"patients," a laughable description of trapped, abused disabled individuals with no legal counsel. All the fee is, is another fine.

Plaintiff began his so called BCCS "classes" or equally absurd "treatment" on October 11, 2022. No instruction by BCCS was given to Plaintiff how to connect to the Zoom class, only an ID number to enter the class. Consequently, Walker was charged with missing the first BCCS Zoom DUI class, but inexplicitly not notified of this fact until December 2022.

 Plaintiff Walker was not notified until on or about 12/7/22 that he failed a urine test on 9/29/22.  BCCS falsely labeled Plaintiff's urine test as positive.  Plaintiff had not consumed alcohol for at least four months prior to the urine test, making a positive reading impossible unless Jones tampered with it or a malfunctioning testing device was used to analyze the urine sample. BCCS uses uninspected testing devices with no chain of custody for samples.

This bogus urine test was used by BCCS Defendants as false evidence against him should he eventually complain about BCCS.   BCCS falsified the bogus urine screen and fraudulently used it against him when he complained about Rebecca Jones and her arbitrary Zoom class that injured the Plaintiff.

BCCS HOST REBECCA JONES HARASSMENT, INTIMIDATION, COERCION AND RETALIATION

During the last class of November 2022, BCCS "host" (who appeared to suffer from hallucinations and incoherence on air and who could not clearly speak the English language correctly) falsely accused Plaintiff of driving a car while in class and called him a "liar" in front of his Zoom classmates.

On or about December 1, 2022, Defendant Rebecca Jones, heretofore described as BCCS "host," during a Zoom class, falsely accused Plaintiff of driving a car during class. He was not.

No proscription about **any** activity during a Zoom class was the BCCS policy. Only when the "host" capriciously and arbitrarily decided she didn't like what you were doing other than listening and speaking did she call you out and use it as an excuse to threaten you with discharge from the program. This policy caused Plaintiff fear and injured him.

Plaintiff's discharge from the program meant a financial windfall for BCCS and therefore there were no established rules or guidelines published for Zoom class behavior. Participants could be seen live engaging in all sorts of extraneous behaviors: grooming, typing, walking, driving and more. No one was warned that this was a violation leading to discharge.

On or about December 3, 2022, Jones falsely accused the Plaintiff of being inside a Home Depot store and ordered him to leave the class, which he did. Before leaving, Plaintiff told Jones he would report her for her actions against him. Jones became enraged and yelled "Go ahead see if I care!".

Jones treated no other classmate like she did the Plaintiff, the only member of the class who was a senior citizen. Jones is in her thirties and Black. Plaintiff is a white male. Jones treated Plaintiff's similarly-situated classmates far better than the Plaintiff.

On or about December 5, 2022, Jones blocked the Plaintiff's entry into the Zoom class that day, injuring him. On or about December 7, 2022, Plaintiff was allowed back into Jones' Zoom class in order for Jones to tell Plaintiff he was discharged from the program because he tested positive for a urine screen on September 29, 2022, injuring him.  This was impossible, as Plaintiff had not consumed alcohol since before March of that year. Only **after** Plaintiff told Jones he would report her did the series of negative actions against him begin.

There is no legitimate chain of custody for urine samples collected by BCCS.  Testing is secret. This is done on purpose to falsify test results and allows BCCS to discharge anyone from the program for no valid reason. BCCS then classifies the falsely discharged as "at risk".

That unfortunate person like the Plaintiff who was injured by this policy, must then pay another "treatment" contractor to join their program which is far more punitive than that of BCCS. The new treatment provider then kicks back money to BCCS for the new "client's" fees. BCCS did this to the Plaintiff, injuring him.

BCCS EMPLOYEE LATRICE MASON RETALIATION and CONSPIRACY

BCCS and BCCS defendants Jones, Mason and Morrison discussed the Plaintiff's situation with email, texts and phone calls and discharged him from the program.  Mason listed 3 classes missed as one reason, but records will show Plaintiff was in fact present during the class dates cited.  Also cited as reason for discharge was the allegation that Plaintiff missed 3 urine screens to detect BAC.

Plaintiff sent an email to Mason complaining that Jones had illegally retaliated against him for saying he would report her for her misconduct. Plaintiff's email listed the statutes Jones violated by retaliating against him. After receiving Plaintiff's email, Mason then proceeded to also retaliate against the Plaintiff by sending him notice by email and letter that he was discharged from the BCCS DUI program on her (Mason's) order.

Plaintiff was discharged by both Jones and Mason, but for completely different reasons. And so each discharge was a separate act of retaliation by Jones and Mason. They discussed the

Plaintiff's case and Mason sustained Jones' decision while engaging in her own petty discharge announcement to Plaintiff, injuring him psychologically, emotionally and financially.

The time and location of the BCCS urine screens were kept secret from the Plaintiff, ostensibly to either (1), guarantee he would miss notice of the test, or, (2) guarantee the possibility of failing the test if the Plaintiff did receive notice. In both cases, BCCS could discharge the Plaintiff, keep his $1000 in fees and collect a kickback from a list of secondary providers provided by BCC.  This BCCS policy injured the Plaintiff.

One would assume that the random testing procedures would be completely open and transparent leaving NO QUESTION in the mind of the Client on what was his duty and obligation to cooperate with the testing.  For example, Defendant Jones could have easily told Plaintiff at the next class after the alleged missed screen that he had in fact missed it and to contact someone at BCCS to rectify the situation.  Or the Plaintiff's "counselor" (Plaintiff was never told who this was) could have contacted him and given him notice about this crucial problem. This was done in a deliberate attempt to injure the Plaintiff and he was injured as a result.

Defendant Mason mailed an untitled form to Plaintiff that effectively was an appeal of the discharge. The form was to be filled out and mailed to a non-existing address 1901 N. Dupont

Hy. in New Castle, DE.  Instead, Plaintiff emailed the form to Mason and dropped off a hard copy to her office.

 Mason claimed in an email she would forward it to "Delaware Health and Social Services," but she did not. No mention of the person(s) who would read and rule on the all-important appeal was given in case Plaintiff needed to appeal THAT decision. All of Mason's actions directed against Plaintiff injured him by causing him great fear and anxiety because her actions would prevent Plaintiff from getting his driver's license back and getting his life back in order.

 It appears that BCCS defendant Mason, at least, operates a sham appeal process.  Mason's sham appeal process injured the Plaintiff emotionally and psychologically as it moved the date when he could legally drive in Delaware further away without due process.

All of the defendants cited above owed the Plaintiff a duty of care and adherence to the law in their interactions with/against him.  All of the defendants breached that duty of care.  The Plaintiff suffered injuries physically, emotionally, financially and through loss of reputation caused by the defendants' breach of duty to obey the law.

Even though all of the defendants broke the law, subsequently injuring him, they were also NEGLIGENT in ignoring the law, causing injury to the Plaintiff.

IMMUNITIES

The Harrington Defendants have no immunity, qualified, absolute or otherwise.  They are not trained to violate the law but enforce it fairly. Being ignorant of the law is no excuse for breaking it.  But, through hubris and sloth, the Defendants have decided on their own that they are above the law.

The Defendants are being sued in ALL of their capacities.

CONSTITUTIONAL CLAIMS

Plaintiff makes the following claims for damages based on the statutes cited below.  Because BCCS – like the Harrington Police Department – is an extension of the Delaware criminal justice system, both Defendants et. al. are one and the same in this Action.  Plaintiff brings this Action by 42 USC 1331.

 42 USC 1983 states that no citizen shall be deprived of rights by any state (BCCS) or local (City of Harrington) government under color of law, and allows civil procedure to collect damages for injuries suffered at the hands of those who deprived Plaintiff of his rights guaranteed by law.

FIRST AMENDMENT CLAIM FOR DAMAGES

Plaintiff is a politician currently running for public office in Delaware.  Both Defendants and their co-defendants violated the Plaintiff's First Amendment sights by taking away his driver's license illegally. Plaintiff cannot affordably travel the state and campaign. He cannot meet with gathered groups of voters because of a lack of transportation.

 He cannot erect highway signs – his specialty – without a driver's license. The Defendants have SILENCED the Plaintiff, costing him the possibility of earning hundreds of thousands of dollars and serving the people of Delaware with good government.

BCCS silenced the Plaintiff by illegally discharging him from their DUI class. They silenced him by giving him a bogus appeal form.

FORTEENTH AMENDMENT CLAIMS FOR DAMAGES

1.  UNEQUAL TREATMENT

The Harrington defendants violated Plaintiff's rights as a disabled person by treating him worse than a similarly-situated non-disabled driver stopped for the same offense – here – allegedly, speeding.  Unless you are suspected of having a BAC over .08%, you are given a ticket and told to proceed even though that driver may be profoundly more impaired than the suspected alcoholic.

But the suspected alcoholic is field-tested by Harrington using a subjective test almost impossible to pass, except if you are a trained athlete.  Harrington does not field test drivers not suspected of having an illegal BAC. The non-disabled driver is released to present a problem elsewhere but the disabled driver goes to jail and begins a long and costly sentence.

Defendant BCCS and all BCCS defendants treated the Plaintiff worse than their non-disabled clients like current illegal drug users who were cheating on their abstinence requirements within BCCS programs.

2.  DUE PROCESS CLAIMS

Plaintiff was arrested and prosecuted by HPD for driving under the influence of alcohol (DUI) under Title 21 of the Delaware Criminal Code.  HPD used false evidence to arrest and charge the Plaintiff: BAC.  Plaintiff did not take the field test. The only evidence used to charge him was allegedly gathered by an uncertified breathalyzer at the hands of a Harrington police officer.

HPD determined Plaintiff was illegally impaired because his BAC was allegedly too high.  But BAC does not measure impairment. It measures the percentage of alcohol in the bloodstream and only that.  HPD's use of BAC as evidence of impairment was therefore illegal and violative of the due process, or fairness, provisions of the United States Constitution.

Defendant BCCS violated Plaintiff's rights to due process when they wrongfully discharged him from their DUI class without timely notice that he allegedly broke unpublished rules.  The fraudulent urine testing protocol – also unpublished by BCCS – was secret with no legitimate chain of custody for samples of urine taken from clients, violating Plaintiff's right to due process, or, fairness.  Finally, the bogus appeal process violated Plaintiff's right to a fair hearing on the discharge.

FOURTH AMENDMENT CLAIMS FOR DAMAGES

When HPD falsely arrested Plaintiff for DUI, locked him up and seized his car using the false evidence of BAC as the cause of action, they violated all the protections for privacy guaranteed by this Amendment. The search for the false evidence of BAC was unreasonable and arbitrary.

### FIFTH AMENDMENT CLAIMS FOR DAMAGES

The Fifth Amendment to the US Constitution states that no person shall be a witness against himself or be subjected to double jeopardy.  HPD forced Plaintiff to incriminate himself when they forced him to use a breathalyzer to measure his BAC. He was never given a Miranda warning. City of Harrington effectively punished the Plaintiff four times for one alleged offense: License revocation, fines and fees, probation and mandatory BCCS punishment in the form of the fraudulent BCCS DUI "class".

### SIXTH AMENDMENT CLAIM FOR DAMAGES

The State of Delaware appointed a lawyer for the Plaintiff in this matter because his income was so low.  The court-appointed lawyer delayed disposing of the case for over a year, depriving the Plaintiff of a speedy trial. Delaware lawyers don't contest DUI cases in almost all instances; they simply plea bargain with the State. These are kangaroo courts.

The court-appointed lawyer serving the Plaintiff offered no effective defense to the Harrington charge. It was a sham defense.

### EIGHTH AMENDMENT CLAIM FOR DAMAGES

Defendants punished the Plaintiff in a "cruel and unusual" manner: excessive fines and other costs, loss of an essential privilege (a driver's license), loss of the means to gainful employment, and loss of freedom. The punishment for DUI far exceeds the crime in Delaware.

### FOURTEENTH AMENDMENT CLAIMS FOR DAMAGES (UNEQUAL TREATMENT, DISPARATE IMPACT)

The Defendants treated other similarly-situated non-disabled persons better than they treated the Plaintiff under identical circumstances (allowing non-alcoholics to drive while impaired, for example, or allowing illegal drug users to remain in good standing in BCCS programs).  Defendants' actions also have a disparate impact, or de facto, negative effect on poverty level disabled citizens like the Plaintiff, whose lives are, temporarily at least, destroyed.

42 USC 12201 et. seq. (Americans with Disabilities Act -ADA-II) CLAIMS FOR DAMAGES

DENIAL OF REASONABLE ACCOMODATIONS

When the arresting HPD officer denied Plaintiff the opportunity to walk home instead of going to jail after Plaintiff asked for that accommodation because he was disabled, that officer – representing the City of Harrington and the Harrington defendants – violated the reasonable accommodations guarantee found in the ADA II.

When BCCS and defendants Latrice Mason denied Plaintiff's request for a reasonable accommodation and be permitted back in the BCCS DUI program, they violated the ADA II.

DISCRIMINATION/UNEQUAL TREATMENT

When all of the Defendants treated the Plaintiff worse than other similarly-situated non-disabled persons, they violated the anti-discrimination clause in 42 USC 12201 (a)(b).  They also violated 42 USC 1983, 28 CFR 35, 42 USC 1985 and 18 USC 242.

DISPARATE IMPACT DISCRIMINATION

Plaintiff reached a plea bargain with the State, pleaded guilty to DUI, fined $1000, placed on one year probation, license revoked for one year dated at the time of sentencing (one year after his arrest) and sentenced to the Brandywine Counseling and Community Services Corporation (BCCS) DUI program in order to get his driver's license back.

BCCS CONSUMER FRAUD, MISREPRESENTATION AND MISTREATMENT OF THE DISABLED

BCCS is a Delaware corporation masquerading as a healthcare provider but is actually an extension of the Delaware criminal justice system. Low level, uneducated employees – many of them former and current drug addicts- have the power to send so-called clients to jail for violating probation if they are discharged from phony BCCS programs fraudulently claiming to be treatment programs.  BCCS is guilty of wire fraud and mail fraud.

During Zoom classes BCCS employees frequently verbally threatened clients – including Plaintiff – with discharge from its DUI program if the clients did not obey their random, arbitrary demands during class. No set rules for client behavior were set, allowing BCCS "hosts" to make the rules as they went along. This frightened all clients including the Plaintiff, causing him injury.

BCCS collects over $1000 in fees to attend its so-called classes. As BCCS is no more than an extension of the Delaware criminal justice system, these "fees" are effectively fines.  They are excessive and unconscionable and violate the 8th Amendment prohibition of excessive fines.

14

Also intimidating was the rule that everyone inside a BCCS facility was required to wear a mask, even though BCCS employees behind glass partitions could be plainly seen not wearing a mask, long after the State ended mask mandates. BCCS required masks to coerce clients into believing BCCS was a healthcare provider when in fact it was not. The masking was intimidating for clients and Plaintiff avers the masking was intentional intimidation and harassment. BCCS injured the Plaintiff by forcing him to wear a mask, causing him to inhale toxins he exhaled, and he frequently had symptoms like gagging and feeling light-headed while wearing a BCCS-supplied black mask.

BCCS employees engaged in money laundering. A large sign at BCCS offices stated that only cash was accepted for their services. Plaintiff paid defendant Rebecca Jones $500 in cash to sign up for the DUI program.  These cash payments to BCCS employees were concealed from scrutiny and financed vacations, cars and other luxuries enjoyed by BCCS employees.

Plaintiff was sentenced to the BCCS Zoom class program to get his driver's license revocation removed at Delaware Superior Court. The BCCS Zoom class protocol is **only** to give the client the meeting number and start date along with the scheduled meeting dates. Sixteen classes must be completed, two per week.  On purpose, the client is left to figure out how to download the Zoom app and figure out which icons to push on his/her cellphone or laptop in order to be seen and heard in the Zoom class. Plaintiff is 71 and not tech savvy. It was unfair to him and others like him.

Many in BCCS'S DUI program don't even own a cellphone or laptop let alone pay nearly $1000 to purchase the course. Plaintiff collects $1200 per month in Social Security Retirement payments. He had to borrow the $500 cash payment from a friend to register for the program.

No effort is made to accommodate these disabled citizens, like the Plaintiff. No effort was made to accommodate the Plaintiff who was clueless on how to be seen and heard on the Zoom class. Plaintiff avers his right to free speech was denied by BCCS in this instance.

BCCS misrepresented in its documents and advertisements that it was a healthcare provider whose goal was to help Plaintiff with his alcoholism and Plaintiff depended on BCCS's characterization of itself as a healthcare provider. When Plaintiff found out that BCCS was merely an extension of the Delaware criminal justice system and engaged only in prolonging the punishment of Plaintiff, the Plaintiff was injured in that he experienced great disappointment and was depressed and experienced anxiety because of BCCS's lies and prevarications.

Plaintiff has paid over $700 to date for the BCCS bogus "DUI program". BCCS defrauded Plaintiff here. BCCS stole Plaintiff's $700 under false pretense and under Delaware consumer fraud laws.

The absence of guidelines, instructions, rules and notice in BCCS programs is not an oversight or accident. Through the explicit cooperation and orders of the State of Delaware Health and

Social Services Department, their partner, BCCS intentionally uses this bedlam to penalize and eventually dismiss clients from their so-called program, causing them to violate probation and stay in the criminal justice system longer than advertised. This is income for the State and BCCS, who receives a kickback from other similar providers that the client is sent to after BCCS is done with them through the discharge process.

BCCS BAIT AND SWITCH MISREPRESENTATION

BCCS claims to be a healthcare provider but is instead a part of Delaware's criminal justice system. Zero emphasis is on the methods of ending alcohol addiction like weaning. Instead, the BCCS program requires the client to quit alcohol abruptly cold turkey, a dangerous and risky strategy. Seizures, hallucinations, and even coma and death can occur in an individual who quits any addictive substance like alcohol abruptly.

BCCS provides methadone and suboxone as a substitute for heroin for addicts. BCCS does operate a weaning program for those disabled clients, but not the alcoholics. The heroin addicts are treated far better than the alcoholics. The alcoholics are punished severely compared to the heroin addicts. This is another example of unequal treatment handed down to alcoholics by the State of Delaware and BCCS.

17

## BCCS ARE TYRANTS

BCCS is a Delaware corporation claiming to offer treatment to DUI offenders but only offers another level of punishment for DUI offenders. There is zero treatment involved in the program.  The Kafkaesque, catch 22, mindless protocols of this BCCS "program" staggers the imagination with its outright fraud, deception, misrepresentation, cruelty and multiple violations of state and federal laws.

Huge sums of money are extracted from hapless disabled, poverty level DUI offenders like the Plaintiff. Ostensibly, in return, the offenders are forced to endure hour long "classes" run by arrogant, tyrannical "hosts" who spend the hour insulting, humiliating and ridiculing the participants. Plaintiff endured all of this time-wasting nonsense while attending these so- called "drunk" classes, which are basically chat rooms run by uneducated tyros abusing disabled people forced to attend to get their driver's license restored.

In 2021 Plaintiff attempted three times to sign up for the BCCS DUI program after paying $150. Each time a document was given to the Plaintiff by BCCS staff with a date and time to show up for intake (please see Exhibit). Three times BCCS staff missed the time and date of intake. On the fourth try Plaintiff was admitted to the program after paying $500 – only cash is accepted to avoid paying taxes- and signing documents he did not receive a copy of and producing an unsupervised urine sample.  BCCS illegally extended his probation and license revocation period for profit, and in this way, did injure the Plaintiff.

18

There is NO legitimate chain of custody for urine samples collected by BCCS, rendering them useless as evidence.  BCCS injured the Plaintiff through their intentional or unintentional negligence in enrolling him in their DUI program because it further delayed the possibility of getting his license back for another four months.  This caused the Plaintiff great emotional distress and anguish.

BCCS wanted their money. They extorted the Plaintiff by claiming if he didn't pay up, he would not get his license back.  BCCS blackmailed Plaintiff by implying if he didn't pay his "fees" he/she/they would be reported to Delaware Probation and Parole and sent to prison for probation violation. This is standard operating procedure for all BCCS DUI "clients," or "patients," a laughable description of trapped, abused disabled individuals with no legal counsel. All the fee is, is another fine.

Plaintiff began his so called BCCS "classes" or equally absurd "treatment" on October 11, 2022. No instruction by BCCS was given to Plaintiff how to connect to the Zoom class, only an ID number to enter the class. Consequently, Walker was charged with missing the first BCCS Zoom DUI class, but inexplicitly not notified of this fact until December 2022.

Plaintiff Walker was not notified until on or about 12/7/22 that he failed a urine test on 9/29/22.  BCCS falsely labeled Plaintiff's urine test as positive.  Plaintiff had not consumed alcohol for at least four months prior to the urine test, making a positive reading impossible

19

unless Jones tampered with it or a malfunctioning testing device was used to analyze the urine sample. BCCS uses uninspected testing devices with no chain of custody for samples.

This bogus urine test was used by BCCS Defendants as false evidence against him should he eventually complain about BCCS.   BCCS falsified the bogus urine screen and fraudulently used it against him when he complained about Rebecca Jones and her arbitrary Zoom class that injured the Plaintiff.


### BCCS HOST REBECCA JONES HARASSMENT, INTIMIDATION, COERCION AND RETALIATION


During the last class of November 2022, BCCS "host" (who appeared to suffer from hallucinations and incoherence on air and who could not clearly speak the English language correctly) falsely accused Plaintiff of driving a car while in class and called him a "liar" in front of his Zoom classmates.


On or about December 1, 2022, Defendant Rebecca Jones, heretofore described as BCCS "host," during a Zoom class, falsely accused Plaintiff of driving a car during class. He was not.


 No proscription about **any** activity during a Zoom class was the BCCS policy. Only when the "host" capriciously and arbitrarily decided she didn't like what you were doing other than

listening and speaking did she call you out and use it as an excuse to threaten you with discharge from the program. This policy caused Plaintiff fear and injured him.

Plaintiff's discharge from the program meant a financial windfall for BCCS and therefore there were no established rules or guidelines published for Zoom class behavior. Participants could be seen live engaging in all sorts of extraneous behaviors: grooming, typing, walking, driving and more. No one was warned that this was a violation leading to discharge.

On or about December 3, 2022, Jones falsely accused the Plaintiff of being inside a Home Depot store and ordered him to leave the class, which he did. Before leaving, Plaintiff told Jones he would report her for her actions against him. Jones became enraged and yelled "Go ahead see if I care!".

Jones treated no other classmate like she did the Plaintiff, the only member of the class who was a senior citizen. Jones is in her thirties and Black. Plaintiff is a white male. Jones treated Plaintiff's similarly-situated classmates far better than the Plaintiff.

On or about December 5, 2022, Jones blocked the Plaintiff's entry into the Zoom class that day, injuring him. On or about December 7, 2022, Plaintiff was allowed back into Jones' Zoom class in order for Jones to tell Plaintiff he was discharged from the program because he tested

21

positive for a urine screen on September 29, 2022, injuring him.  This was impossible, as Plaintiff had not consumed alcohol since before March of that year. Only **after** Plaintiff told Jones he would report her did the series of negative actions against him begin.

There is no legitimate chain of custody for urine samples collected by BCCS.  Testing is secret. This is done on purpose to falsify test results and allows BCCS to discharge anyone from the program for no valid reason. BCCS then classifies the falsely discharged as "at risk".

That unfortunate person like the Plaintiff who was injured by this policy, must then pay another "treatment" contractor to join their program which is far more punitive than that of BCCS. The new treatment provider then kicks back money to BCCS for the new "client's" fees. BCCS did this to the Plaintiff, injuring him.

### BCCS EMPLOYEE LATRICE MASON RETALIATION and CONSPIRACY

BCCS and BCCS defendants Jones, Mason and Morrison discussed the Plaintiff's situation with email, texts and phone calls and discharged him from the program.  Mason listed 3 classes missed as one reason, but records will show Plaintiff was in fact present during the class dates cited.  Also cited as reason for discharge was the allegation that Plaintiff missed 3 urine screens to detect BAC.

22

Plaintiff sent an email to Mason complaining that Jones had illegally retaliated against him for saying he would report her for her misconduct. Plaintiff's email listed the statutes Jones violated by retaliating against him. After receiving Plaintiff's email, Mason then proceeded to also retaliate against the Plaintiff by sending him notice by email and letter that he was discharged from the BCCS DUI program on her (Mason's) order.

Plaintiff was discharged by both Jones and Mason, but for completely different reasons. And so each discharge was a separate act of retaliation by Jones and Mason. They discussed the Plaintiff's case and Mason sustained Jones' decision while engaging in her own petty discharge announcement to Plaintiff, injuring him psychologically, emotionally and financially.

The time and location of the BCCS urine screens were kept secret from the Plaintiff, ostensibly to either (1), guarantee he would miss notice of the test, or, (2) guarantee the possibility of failing the test if the Plaintiff did receive notice. In both cases, BCCS could discharge the Plaintiff, keep his $1000 in fees and collect a kickback from a list of secondary providers provided by BCC.  This BCCS policy injured the Plaintiff.

One would assume that the random testing procedures would be completely open and transparent leaving NO QUESTION in the mind of the Client on what was his duty and obligation to cooperate with the testing.  For example, Defendant Jones could have easily told Plaintiff at

23

the next class after the alleged missed screen that he had in fact missed it and to contact

someone at BCCS to rectify the situation.  Or the Plaintiff's "counselor" (Plaintiff was never told

who this was) could have contacted him and given him notice about this crucial problem. This

was done in a deliberate attempt to injure the Plaintiff and he was injured as a result.

Defendant Mason mailed an untitled form to Plaintiff that effectively was an appeal of the

discharge. The form was to be filled out and mailed to a non-existing address 1901 N. Dupont

Hy. in New Castle, DE.  Instead, Plaintiff emailed the form to Mason and dropped off a hard

copy to her office.

 Mason claimed in an email she would forward it to "Delaware Health and Social Services," but

she did not. No mention of the person(s) who would read and rule on the all-important appeal

was given in case Plaintiff needed to appeal THAT decision. All of Mason's actions directed

against Plaintiff injured him by causing him great fear and anxiety because her actions would

prevent Plaintiff from getting his driver's license back and getting his life back in order.

  It appears that BCCS defendant Mason, at least, operates a sham appeal process.  Mason's

sham appeal process injured the Plaintiff emotionally and psychologically as it moved the date

when he could legally drive in Delaware further away without due process.

All of the defendants cited above owed the Plaintiff a duty of care and adherence to the law in

their interactions with/against him.  All of the defendants breached that duty of care.  The

Plaintiff suffered injuries physically, emotionally, financially and through loss of reputation caused by the defendants' breach of duty to obey the law.

Even though all of the defendants broke the law, subsequently injuring him, they were also NEGLIGENT in ignoring the law, causing injury to the Plaintiff.

IMMUNITIES

City of Harrington and City of Harrington defendants have no absolute or qualified immunity in this matter. These employees are trained NOT to violate some laws while enforcing others. These defendants are being sued in ALL CAPACITIES.

When the defendants broke the law, they injured the Plaintiff.   When they broke the law when they damaged the Plaintiff's reputation and caused him to be injured physically and financially. To this day, the defendants are still injuring the Plaintiff by continuing to take adverse actions against him.

PLAINTIFF'S INJURIES

 The whole illegal process of arrest, imprisonment, automobile seizure, license seizure, excessive fines, hopeless red tape, lack of the means to earn a living and the manifest

unfairness of the entire Kafkaesque episode has profoundly hurt the Plaintiff emotionally, physically and financially. After the arrest by HPD, Plaintiff has been treated for anxiety and depression (Wellbutrin), high blood pressure (Lisinopril) and has since been diagnosed with a heart murmur and irregular heartbeat.

 The Plaintiff is homeless without the means ( a drivers license) to work and make money and live free. It is an understatement to say the Plaintiff's life is ruined because of the defendants' actions towards him.

Plaintiff is now a criminal; a probationer under the supervision of the Delaware Department of Corrections. Plaintiff is no longer a free man, but is subject to the whims of the Administrative State.

Remember all who read this: Blood Alcohol Content is NOT a metric of driver impairment/performance.  A physical examination by a trained observer is the only scientific – true and accurate- way to measure driver impairment/performance.

Therefore, BAC is FALSE EVIDENCE MANUFACTERED BY HARRINGTON and therefore inadmissible in a court of law.  This is a violation of due process of law.

CONSTITUTIONAL CLAIMS

26

Plaintiff makes the following claims based on the statutes cited below. City of Harrington

Defendants and BCCS are one and the same in this matter. 42 USC 1983 states no citizen shall

be deprived of rights by any state or local government under color of law, and allows civil

procedure to collect damages for injuries suffered at the hands of those who deprived Plaintiff

of his rights under law.

FIRST AMENDMENT CLAIM

Jones, Mason and BCCS silenced the Plaintiff by discharging him from the Zoom class he was

attending. They attempted to silence him by sending him a bogus appeal form with a bogus

address. They attempted to silence him by not giving him instructions on how to use an android

cellphone – the type overwhelmingly used by the typical BCCS client- to access Zoom classes.

City of Harrington silenced Plaintiff with his arrest and subsequent revocation of driving

privileges.  Plaintiff had to end his campaign for Congress in Delaware because he could not

drive, a necessity for his campaign. The same result will happen in when Plaintiff is unable to

campaigning in 2024.

Campaigning involves gathering and assembly of voters and other citizens with the Plaintiff.

That was impossible without a driver's license. Plaintiff depends on erecting signs alongside

roadways to win elections. This became impossible without a driver's license, as the Plaintiff

campaigns without any assistance for financial reasons and accepts no donations.  Without a

driver's license, Plaintiff was denied freedom of speech to spread his ideas of good government

to the people of both states.


### FOURTEENTH AMENDMENT CLAIMS


### UNEQUAL TREATMENT


City of Harrington and BCCS defendants violated Plaintiff's right to be treated equally, all things

considered, because if his disability. Those defendants treated other similarly-situated citizens

better than they treated the Plaintiff.


Example: two motorists are stopped for the same offense, here, speeding.  One, suspected of

using alcohol before or during driving, is forced to successfully complete a series of tests: a field

test conducted by the arresting officer that is impossible to perfectly complete; a breathalyzer

test with a piece of machinery (the breathalyzer) notorious for its unreliability; and , finally a

blood test, either voluntary or forced.  A failure in either test is a trip to jail, huge fines,

revocation of license, probation, high insurance costs and DUI classes that are very expensive.

Motorist number two, who may be much more severely impaired than the alcohol user due to illegal drug use, fatigue, low blood sugar, diabetes or a constellation of other causes, is given a speeding ticket by the police officer and then allowed to continue driving, maybe presenting a far more danger than the driver with alcohol in his system.

If driver number one refuses testing, his/her license is suspended for one year. Driver number two is not required to submit to testing because he/she is assumed by the police not to have alcohol in their system.

Assuming that the driver after having used alcohol – and stopped drinking alcohol before police contact and is now  recovering from the effects of alcohol consumption,  at that point in time must be considered disabled under the ADA (his/her use of alcohol negatively impacts major life activities such as driving, working or sleeping for example), and that person must be protected from unequal treatment by state (or, local) governments (42 USC 12201, et. seq.).

 If alcoholics were **not** protected by the ADA, then the State of Delaware could certainly criminalize it just like a myriad other causes of accidents like texting while driving, or eating, or reading the newspaper while driving. Those behaviors/conditions are not protected by the laws.  BUT, recovering alcoholics and using alcoholics ARE protected under 42 USC 12201.

Plaintiff doesn't want to be killed by a drunk driver. But it is more probable Plaintiff will be killed by a DISTRACTED DRIVER, the number one cause of accidents and deaths.

Also, ADA protection does NOT include being allowed to continue driving after failing a legitimate field test, whether with a BAC over .08% or not.   BAC has nothing to do with impairment level: only a physical examination solves the problem.

Plaintiff was a recovering alcoholic and was recovering from alcoholism – or, alcohol poisoning- at the time of his arrest and was in a protected class at that time and could NOT be treated unequally or discriminated against versus a similarly-situated person by the Harrington and BCCS Defendants by virtue of the Fourteenth Amendment and 42 USC 12131 (ADA II).   The defendants violated his rights secured by those laws. Plaintiff was NOT found by Harrington police consuming alcohol or possessing a container of alcohol.  Plaintiff was not disobeying the law because the Harrington speed trap used to stop the Plaintiff was illegal because it was set up outside the City limits.

BCCS treated Plaintiff and the other alcoholics differently from other disabled clients – the heroin addicts – and far worse. BCCS violated Plaintiff Fourteenth Amendment right to be free of unequal treatment.

DUE PROCESS CLAIMS

A "fundamentally unfair" procedure or process – such as an arrest – is one that lacks due process. Plaintiff avers that all of the defendants listed in this action are guilty of violating his due process rights under the Constitution.

All of the defendants violated the Plaintiff's due process rights when they proceeded against him under the false assumption that blood alcohol concentration measured his impairment level or his ability to drive a car. It does not. Therefore, Plaintiff's alleged BAC was falsely used as evidence against him. BAC is not evidence of impairment. It is **only** evidence of blood alcohol concentration. That is a scientific fact. Many things affect performance. BAC is one among a constellation of others.

Alcohol related accidents and deaths are not leading causes of those events. Distracted driving is number one, not alcohol. Using BAC to measure driver impairment is fundamentally unfair, capricious and arbitrary. One could use eye color as an impairment metric and be just as scientific as using BAC. Either case is a violation of due process because it is false evidence!

31

Only a physical examination by a trained observer or an objective field test measures impairment or fitness to drive. Things like timing, reflexes and muscle control measure fitness or impairment, not an arbitrary, capricious blood test for alcohol concentration in the blood. There is no scientific basis for the BAC/driver impairment correlation or cause; hence, to say that it is, is absurd and irrational and violates the due process clause of the Constitution.

City of Harrington violated Plaintiff's right to due process by falsely arresting him for drunk driving .

Defendant BCCS violated Plaintiff's due process rights when they wrongfully discharged him from their programs without proper notice of wrongdoing. The urine testing protocol, or lack of transparency and chain of custody of that protocol violated Plaintiff's due process rights. Finally, the bogus appeal process violated Plaintiff's right to a fair hearing.

FOURTH AMENDMENT

Harrington defendants violated the Plaintiff's Fourth Amendment rights to be left alone when they falsely arrested him and charged him with DUI using false  evidence (BAC).

HPD towed and impounded Plaintiff's car on the night of his arrest. This violated his right to be secure in possession of his private property.

32

FIFTH AMENDMENT CLAIMS

No person shall be a witness against himself or be subjected to double jeopardy. HPD forced

Plaintiff to incriminate himself.  He was intimidated by the Harrington police. They coerced him

into surrendering his rights. He was not read his rights. Delaware Title 21 punishes four times:

license suspension, revocation, fines, probation, and BCCS punishment. This is double jeopardy.

SIXTH AMENDMENT CLAIMS

The State appointed a lawyer for the Plaintiff because his income was so low. That lawyer

delayed disposing of the case for a year, depriving Plaintiff of a speedy trial. The defendant City

of Harrington knows court-appointed attorneys rarely go to trial and instead broker a plea

bargain with the State, which put the Plaintiff in a grave situation having plead guilty to DUI. No

effective defense was offered, depriving the right of the Plaintiff to a fair trial before an

impartial jury.

BCCS violated the Sixth Amendment rights of the Plaintiff when they operated a secret tribunal against him, effectively denying him the right to know who all of his accusers were and the nature of the charges and evidence against him.

## EIGHTH AMENDMENT CLAIMS

The punishments handed out by the State of Delaware for a DUI are cruel and unusual. BCCS and Harrington defendants handed out cruel and unusual punishments to the Plaintiff: excessive fines, criminal violence against him and attempting to destroy his life and career.

Defendant BCCS fees for its DUI program (which isn't a program at all, It's consumer fraud) are nothing more than fines for the State. Plaintiff already paid his fines at settlement of his case in Court of Common Pleas. These extra fines – unconscionable in their amount, over $1000, are excessive fines and proscribed by the Eight Amendment.

 BCCS violated Plaintiff's Eighth Amendment rights when they charged him over $1000 to participate in an online chat room masquerading as a treatment for alcoholism, charged him $50 for missing an appointment that he was never notified of,  caused him to violate his probation on false pretenses, discharged him from the DUI Zoom program in retaliation for his promise to complain about arbitrary, capricious actions by a BCCS employee (Jones), caused his driver's license to be suspended another year without cause and slandered and defamed him in the process. These are cruel and unusual punishments.

34

42 USC 12201 et. seq. CLAIMS

## DISCRIMINATION/UNEQUAL TREATMENT

When all of the defendants treated Plaintiff worse than other similarly situated- individuals they violated the anti-discrimination clause of 42 USC 12201 (a)(b). They also violated 42 USC 1983, 28 CFR 35, 42 USC 1985 and 18 USC 242.  When HPD made contact with the Plaintiff, he was a recovering alcoholic. He was protected from unequal treatment by the anti-discrimination clause of 42 USC 122201.

## DISPARATE IMPACT

Defendants' actions have a disparate impact on poverty level disabled Delawareans, like the Plaintiff, who cannot afford the fines from the State, the unreasonable extended loss of driving rights, the loss of privacy attending mandatory BCCS chat rooms, the probation, the high insurance costs and the ridiculously high BCCS fee schedules. The impact of all these adverse

35

consequences of Title 21 disproportionately punish disadvantaged Delawareans like the Plaintiff.

### 28 CFR 35 NONDISCRININATION ON BASIS OF DISABILITY STATE AND LOCAL SERVICES

Delaware offers a program to citizens whereby those citizens may apply for and complete the requirements for the issuance of a State driver's license. The State revokes the driver's license of qualified recovering alcoholics like the Plaintiff while allowing other similarly-situated to drivers to drive for logical reason. Recovering alcoholics are singled out for harsh treatment, like the Plaintiff was on the night of his arrest, compared to other non-disabled citizens. The State's treatment of the Plaintiff violates 28 CFR 35 in this instance.

### 42 USC 12203 (a)(b) RETALIATION

When HPD arrested the Plaintiff after he claimed disability qualification, that arrest was in retaliation for Plaintiff invoking his rights under 42 USC 12203.  Plaintiff's claim was protected under the ADA II.

When BCCS employee Rebecca Jones discharged the Plaintiff from the BCCS DUI program after he reported to her his desire to make a complaint against Jones for her capricious and arbitrary

actions against him during his Zoom class with her, Jones violated the ban on retaliation found in 42 USC 12203.

When BCCS employee Latrice Mason discharged Plaintiff from the DUI program on a separate occasion, the discharge was made after Plaintiff complained to Mason that Jones' discharge violated the retaliation clause in 42 USC 12203.

Jones, Mason MPD defendants, JP Court magistrate bay health conspired to deprive the Plaintiff of his freedom by locking him up, jabbing a needle in his arm and stealing his blood without permission and caused him to be in violation of the terms of his probation.

## 42 USC 1983 CLAIM

Section 1983 of Title 42 USC provides Plaintiff the right to sue state government employees and others acting "under color of state law" for civil rights violations. Section 1983 provides the means to enforce civil rights laws that already exist.

When Plaintiff was arrested, HPD was acting under "color of state law" – Title 21 – when they deprived him of his rights to equal treatment, due process and reasonable accommodations. HPD's act of unlawfully imprisoning Plaintiff deprived Plaintiff of his rights to be free of police misconduct at the time of arrest and violates 42 USC 1983.

BCCS, as a state contractor, deprived Plaintiff of his rights when they treated him worse than other similarly-situated clients of the BCCS DUI program.  BCCS and BCCS defendants deprived

37

Plaintiff of his rights to due process and inflicted cruel and unusual punishment on him when they discharged him from the program without cause or notice and caused him to violate the terms of probation under Title 21 without notice or justification.

## 42 USC 1985 CLAIM

When the HPD (communication with headquarters after Plaintiff's traffic stop) and BCCS defendants (via email, in person and telephonic) discussed among themselves how and when to seize and punish the Plaintiff for their unlawful purposes, they were conspirators intent on depriving Plaintiff his rights under the US Code. 42 USC 1985 prohibits conspiracies to deprive citizens of their civil rights guaranteed by US Code.

Section 1985 prohibits any person or persons whether or not acting under color of law from interfering by threats, intimidation or coercion or attempts to interfere by threats, coercion and intimidation the exercise or enjoyment by the Plaintiff of rights secured by the Constitution or any other laws.

## 18 USC 241 CRIMINAL CONSPIRACY CLAIM

In addition, by wearing disguises (masks) to conceal their identities after the Pandemic had ended, said BCCS defendants, who constituted a group of two or more people, and had agreed to threaten, injure and intimidate the Plaintiff while he was in the free exercise and enjoyment

of rights and privileges guaranteed by US and other laws, did violate 18 USC 241. Criminal penalties of up to ten years in person are one penalty under this statute.

### 18 USC 242 DEPRIVATION UNDER COLOR OF LAW

18 USC 242 makes it a federal crime to intentionally deprive someone of their constitutional rights under color of law.

1. Harrington defendants intentionally deprived Plaintiff of these rights: privacy, due process and equal treatment. They used excessive, unreasonable force against the Plaintiff in their search for evidence against him, causing him injury. They knew what they were doing and acted willfully because they were trained that way when arresting alcoholics.

2. BCCS defendants deprived Plaintiff of these rights: freedom of speech, privacy, due process, equal treatment and cruel and unusual punishment.

3. Harrington defendants deprived Plaintiff of these rights: freedom of speech and assembly, privacy, due process, equal treatment, cruel and unusual punishment and the right to counsel and the right to be free of self-incrimination.

## SLANDER, LIBEL AND DEFAMATION CLAIMS

When BCCS employee Rebecca Jones told Plaintiff he was a liar in front of her Zoom class she slandered him. When BCCS employee Latrice Mason emailed the Plaintiff and told him he was a liar, Mason defamed the Plaintiff.

When Harrington produced and published the account of Plaintiff's arrest, they defamed him.

## MONEY LAUNDERING

BCCS only accepts cash payments for its DUI program. These cash payments are then concealed from the public eye to enrich BCCS staff member who purchase personal items for personal use like vacations, cars and real estate.

## DELAWARE CRIMINAL LAW CLAIMS

## RACKETEER AND CORRUPT INFLUENCED ORGANIZATION (RICO) CLAIMS

40

Defendant BCCS and BCCS defendants operate an enterprise sustained by a pattern of racketeering activities.  To charge under criminal Racketeer Influenced and Corrupt Organization (RICO) at least two "predicate" crimes within ten years must have been committed through the organization, here, BCCS.

BCCS regularly engaged in consumer fraud and money laundering against the Plaintiff and others, in holding itself out to be a healthcare provider when in fact it is an extension of the Delaware criminal justice system (misrepresentation).  BCCS regularly used intimidation, coercion and harassment against the Plaintiff, criminal violations under Delaware Code.

When BCCS employee Rebecca Jones used the internet Zoom class to harass, slander and unlawfully, and fraudulently discharge the Plaintiff from the DUI program, she committed wire fraud. When BCCS employee Latrice Mason emailed notice that Plaintiff was discharged from the program and followed it up with a mailed notice and a fraudulent appeal form, Mason committed wire fraud and mail fraud.

When BCCS employees discussed among themselves how to deprive Plaintiff of his rights, they created a criminal conspiracy.

41

When City of Harrington unlawfully imprisoned, intimidated, harassed, engaged in civil and criminal conspiracy and coerced the Plaintiff, all criminal offenses under Delaware law, they violated the RICO law as a Racketeer Influence Corrupt Organizati

Defendants City of Harrington and BCCS are corporations, or enterprises, through which employees commit crimes against victims like the Plaintiff, thus meeting the definition of a criminal organization.

## DELAWARE CRIMINAL CODE VIOLATIONS CLAIM

All misdemeanors under Delaware laws that the defendants committed are felonies by virtue of Plaintiff being over 62 years of age.

Defendants City of Harington is guilty of violating the following Delaware criminal laws:

1. Title 11 section 782 UNLAWFUL IMPRISONMENT

2. OFFENSIVE TOUCHING  (Handcuffing)

3. Title 11 section 511 CRIMINAL CONSPIRACY

4. Title 11 section 1311 HARRASSMENT

5. OFFICIAL MISCONDUCT

42

Defendants BCCS are guilty of Consumer Fraud, Money Laundering, Theft by False Pretense, Wire Fraud and Mail Fraud.


CONCLUSION


In conclusion, Plaintiff avers that Delaware Title 21 as it relates to DUI is a totalitarian's dream come true. Title 21 is a license for the State to criminalize the otherwise legal behavior of the majority of its citizens in order to control them and bring wealth and power to the State and State actors. The DUI Industry employs tens of thousands who profit handsomely off of the shattered lives of its victims, destruction of families and ruined futures of disabled citizens. Rehabilitation or treatment for the alcoholic is not considered, only fierce and unending punishment. Delaware Title 21 is a direct violation of the spirit, if not the letter, of the United States Constitution.


RELIEF REQUESTED

Defendants' actions have a disparate impact on poverty-level disabled citizens like the Plaintiff,

who cannot afford the fines and fees, the unreasonable extended loss of driving privileges, the loss of privacy attending mandatory BCCS chat rooms, the probation, the high insurance costs and the ridiculously high BCCS fee schedules. The impact of all these adverse consequences of Delaware DUI laws disproportionately harms disadvantaged citizens like the Plaintiff.

RELIEF REQUESTED

1.  Compensatory and punitive damages to be assessed each defendant in the amount of $1,000,000.
2.  Injunction against City of Harrington using Blood Alcohol Content to measure driver impairment.

By: Scott Walker_____
Date: January 18, 2023